# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                             Case No. 09-CR-230

HARRY C. GLINBERG,

    Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE RUDOLPH T. RANDA

On September 15, 2009, a federal grand jury sitting in this district returned a five-count indictment against defendant Harry C. Glinberg, charging him with one count of conspiracy to engage in money laundering, three counts of failure to file a Form 8300 upon receipt of more that $10,000 in cash and one count of money laundering. On September 22, 2009, the defendant appeared before United States Magistrate Judge Aaron E. Goodstein and entered a plea of not guilty. Pursuant to the pretrial order issued at that time, the defendant filed a motion to suppress evidence (Docket #21); a motion to dismiss counts 2, 3, and 4 (Docket #23); a motion to suppress statements (Docket #25); a motion for a bill of particulars (Docket #27): and an oral motion for production of documents.

A brief review of the procedural background is helpful to a resolution of the pending motions. Prior to the government's filing of a response to the defendant's motions, on March 16, 2010, the grand jury returned a superseding indictment against the defendant, adding the element of "willfulness" to counts 2, 3 and 4. On March 26, 2010, the defendant pled not guilty before this court to the charges in the superseding indictment. The defendant's initial motions remained pending, but subsequently, the defendant narrowed his motion to suppress evidence

and requested an evidentiary hearing on the issue of the missing attachment to the search warrant, Attachment 3. The defendant also requested an evidentiary hearing with respect to any statements he allegedly made to federal agents. All the motions have been resolved, with the exceptions of the motions to a suppress evidence and statements. These motions will be addressed herein.

## **MOTIONS TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

On July 15, 2010, the court held an evidentiary hearing on the defendant's motion to suppress statements and motion to suppress evidence. The following issues were addressed at the hearing: 1)whether Attachment 3 was attached to the search warrant at the time of its issuance and 2) whether the defendants statements to Special Agents Thomas Glunz and Park Jones with the Internal Revenue Service (IRS) should be suppressed. Special Agents Glunz and Jones testified for the government at the hearing. Cora Quinn, secretary to Judge Goodstein, was called as a witness by the defendant.

## **Findings of Fact**

Special Agent Park Jones prepared the affidavit for the search warrants for the defendant's residence in Mequon, Wisconsin and his business in Wauwatosa, Wisconsin, including descriptions of the residence and business. Special Agent Jones also prepared the list of items to be seized, Attachment 3. The purpose of the list of items to be seized is to identify which items lawfully could be seized during the execution of a search warrants. On Friday, August 25, 2006, Special Agent Jones emailed his final draft of the items to be seized, along with the affidavit in support of the search warrant and descriptions of the defendant's home and business to Assistant United States Attorney (AUSA) Brian Resler.

On Monday, August 28, 2006. Special Agent Jones, Special Agent Glunz and AUSA Resler met with Judge Goodstein in his chambers to review the search warrant, the affidavit,

the items to be seized and the description of the defendant's residence and business. Judge Goodstein had Post-It notes on the affidavit with different questions he had and minor grammatical changes that needed to be made. These were discussed with the agents and AUSA Resler. In addition, Judge Goodstein had one addition. Because it was anticipated that one or more computers would be seized, Judge Goodstein wanted an addendum to the search warrant. He was alerted to the potential seizure of computers "because computer data and computer equipment [were listed] under Number 8 in the items to be seized." (Tr. 72). Judge Goodstein provided the addendum, which is used in cases were computer searches will be conducted. The addendum required the agents to report to the court every 14 days about the status of the computer data and equipment seizure.

On August 29, 2006, Special Agent Jones signed the applications for the search warrants and the face sheet of the defendant's arrest warrant. Special Agent Jones does not recall seeing Attachment 3 in Judge Goodstein's chambers, but he is not required to sign the attachment listing the items to be seized. However, Special Agent Jones remembers seeing other documents in Judge Goodstein's chambers which he did not sign. After the warrants were signed, Special Agent Jones and AUSA Resler were provided with copies of the warrant packages.

Special Agent Jones returned to his office at the IRS and made two to three copies of the complete warrant packages, including the application, search warrants, affidavit and attachments. He made an additional ten or more copies of Attachment 3 because he wanted the numerous agents executing the warrants to know what they were authorized to seize. Special Agent Jones testified that, based on his training and experience, if the agents on scene did not have Attachment 3, he would have received many calls inquiring as to what

seizures were authorized. Special Agent Jones did not receive any such calls on August 30, 2006, while the warrants were being executed.

Special Agents Jones and Glunz participated in the execution of the search warrants at the defendant's residence. At approximately 8:20 a.m., on August 30, 2006, these agents arrived at the defendant's residence. Special Agent Jones rang the doorbell and the defendant answered the door. Special Agent Jones identified himself and Special Agent Glunz as law enforcement officers and asked the defendant to step inside. A protective sweep was conducted for the safety of the officers and to determine if other persons were present in the residence. The defendant was escorted to the living room and advised of the search warrant for his residence. He also was provided a copy of the warrant. Thereafter, the defendant checked on his daughter in a bedroom and put on long pants. He was not handcuffed or asked to leave the bedroom quickly. The defendant was calm and cooperative.

After the defendant dressed and checked on his daughter, Special Agent Jones informed him that they also had a search warrant for his business and a warrant for his arrest. The defendant was give a copy of the arrest warrant and he said, "Maybe I should talk to my attorney." (Tr. 14). Special Agent Jones read the defendant his Miranda[1] rights. The defendant indicated that he understood the rights and said he did not want to answer any questions until he spoke with his attorney first.

At approximately 8:35 a.m., the defendant called his attorney, but was unable to reach him. Thereafter, Special Agents Glunz and Jones sat with the defendant in his kitchen in silence. After about one minute, the defendant told the agents about a transaction that occurred at his jewelry store about one year prior. The defendant said that a customer purchased a Rolex watch and used cash and a cashier's check to make the purchase. The

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

defendant said he then prepared a letter describing the transaction and the individual making the purchase which he attached to the receipt of the purchase.

In response to the defendant's statement, Special Agent Glunz asked the defendant, "Did you file an 8300." (Tr. 16). The defendant said he could not remember. Special Agent Glunz then asked the defendant how many Form 8300s he had filed and he believed that the defendant replied, "less than five." (Tr. 17). This conversation took place at about 8:40 a.m. The defendant was placed under arrest, but he was not handcuffed. Agent Glunz described the defendant as "calm and cooperative." (Tr. 18). The defendant did not present any physical indication that he was not comfortable with what was taking place. During the conversation with the defendant, the agents did not raise their voices or threaten the defendant.

After this conversation, the agents asked the defendant procedural questions regarding the his house. They asked whether he had valuables in the house that they should be aware of. The defendant informed them of a suitcase full of jewelry in the living room.

Prior to securing the suitcase, at approximately 9:20 a.m., the defendant made another call to his attorney. He spoke with an attorney in the law firm who related to Special Agent Jones that the defendant would not be making any statements at this time. This second call was made approximately 45 minutes after the defendant initially tried to contact his attorney.

After the discussion regarding the valuables, there was a lull in the conversation. Special Agent Glunz described it as an "uncomfortable silence." (Tr. 20). The defendant then asked the agents "what the warrant was about." (Tr. 20). The defendant stated that he wanted to cooperate and that he was trying to get away from doing business with "those guys." (Tr. 20). When Special Agent Glunz asked the defendant what he meant by "those guys," the defendant responded, "Drug dealer types." (Tr. 21).

During this exchange with the agents, the defendant was calm, polite and cooperative. The conversation took place in the defendant's kitchen, during daylight hours and he was not handcuffed. At no time did the agents yell or threaten the defendant.

Cora Quinn, secretary to Judge Goodstein, testified that she had no independent recollection of the issuance and return of the search warrants in this case. Rather, she explained the judge's general procedure for issuing search warrants. She testified that an assistant United States attorney or a federal agent hand delivers a copy of the search warrant application, affidavit and attachments to chambers for the judge's review. After the judge reviews the documents and is satisfied with them, a time is set for the agent and the assistant United States attorney to come to chambers. The judge already has been provided with the original warrant and attachments. The agent is placed under oath and the documents are executed. The documents are then provided to Ms. Quinn for processing.

The agent is provided with the original search warrant and a certified copy of the search warrant and application. The assistant United States attorney leaves chambers with certified copies of everything. The original affidavit and a copy of the search warrant with attachments is kept in chambers "as a placeholder in [the court's] file until the original warrant is returned as ordered." (Tr. 108).

The agent usually returns the search warrant alone. The agent contacts chambers to schedule a time for the return. He appears before the judge with the original warrant, is placed under oath to swear that the return is a true and correct copy of the inventory and items seized pursuant to the warrant. After the return is made, Judge Goodstein gives everything to Ms. Quinn who makes a copy of the signature page of the return for the agent. The copy is given to the agent. This whole process generally takes about five minutes. Ms. Quinn then takes the original warrant, the "placeholder" warrant and the original probable cause affidavit in her file

and returns that file directly to the Clerk of Court for scanning and docketing. Procedures now have been changed to review agent's returns. Attachments to a search warrant issued by a magistrate judge are to be affixed to the search warrant when it is returned to the court.

Ms. Quinn reviewed Defendant's Exh. 1000, a copy of the court file for the two search warrants in this case. She acknowledged that the set of documents contains Attachments I and 2 to the search warrants, but not Attachment 3. It also contains a document that should not be in the search warrant file – the defendant profile sheet which accompanies an arrest warrant.

The parties have stipulated that both the physical court file (the paper file) and the copy available on PACER contain: 1) the search warrants; 2) the application; 3) Attachment 1; and 4) Attachment 2. There is no Attachment 3 in either file. The parties also agree that no copy of Attachment 3 was provided to the defendant's prior attorney in discovery, nor was a copy initially provided to the defendant's current attorney in discovery. AUSA Resler first provided defendant's counsel with a copy of Attachment 3 on February 16, 2010, after defense pretrial motions were filed.

## **ANALYSIS**

### **Motion to Suppress Evidence**

On February 1, 2010, the defendant filed a motion to suppress evidence seized and statements made during the execution of federal search warrants at his home and business, Glinberg Jewelers. The August 30, 2006, searches of the plaintiff's home and business, were conducted pursuant to a warrant issued by Magistrate Judge Aaron E. Goodstein on August 29, 2006, at 3:15 p.m. The defendant asserts that the warrants fail to describe the items to be seized as required. Instead, the warrants simply say: "See Attachment 3," and do not incorporate that attachment by reference. The defendant asserts that the record establishes

that there was no Attachment 3 attached to the search warrants. In addition, he asserts that his statements were obtained in violation of the Fifth and Sixth Amendments.

In response, the government asserts that the Attachment 3 was attached to the search warrants and the search warrants satisfy the Fourth Amendment's particularity requirement. Therefore, the government maintains that suppression of the evidence seized from the defendant's home and business is not warranted. The government also asserts that the defendant's right to counsel was not violated and, therefore, his statements need not be suppressed.

Contrary to the defendant's contentions, the record establishes that although Attachment 3 was not attached to the search warrants when the search warrants were returned, Judge Goodstein considered Attachment 3 when issuing the search warrants. Included in the items to be seized listed in Attachment 3 was a computer. As he typically does, Judge Goodstein provided the government an addendum to be attached to Attachment 3, relating to the seizure of computer data. The addendum required the agent to report back to Judge Goodstein every 14 days if any computer equipment was seized pursuant to the warrant.

Moreover, the record establishes that the agents executing the warrants were provided with copies of Attachment 3. Specifically, after Judge Goodstein issued the search warrant, Special Agent Jones returned to his office at the IRS and made two or three copies of the complete warrant package including the application, search warrants, affidavit and attachments. Special Agent Jones made ten or more copies of Attachment 3 to give to the numerous agents executing the warrants so they would know what they were authorized to seize. Additionally, Special Agent Jones testified that, based on his training and experience, if the agents executing the warrants did not have Attachment 3 listing the items to be seized,

they would have called him inquiring as to what seizures were authorized. Special Agent Jones did not receive any such calls while the agents were executing the warrants on August 30, 2006.

The Fourth Amendment requires that warrants particularly describe "the place to be searched and the persons or things to be seized." U.S. Const. amend IV. Although the particularity requirement of the Fourth Amendment is litigated less often than the "probable cause" requirement, it too, serves an important function. United States v. Shoffner, 826 F.2d 619, 630 (7th Cir. 1987). The requirement of a "particular description" of things to be seized was a direct response to the evil of the general warrant, which allowed a general exploratory rummaging in a person's belongings. See Andresen v. Maryland, 427 U.S. 463 (1976). "But it also serves to prevent circumvention of the requirement of probable cause . . . by limiting the discretion of officers executing a warrant to determine the permissible scope of their search." United States v. Sims, 553 F.3d 580, 582 (7th Cir. 2009) (internal citations omitted).

A description in a warrant is valid "if it is as specific as the circumstances and the nature of the activity under investigation permit." Shoffner, 826 F.2d at 630-631 (quoting United States v. Blum, 753 F.2d 999, 1001 [11th Cir. 1985]). How detailed the warrant must be follows directly from the nature of the items there is probable cause to seize; detail is necessary only to the extent the judicial officer must limit the search and seizure to those items. United States v. Bentley, 825 F.2d 1104, 1110 (7th Cir. 1987). "The level of specificity must be such . . . that the officers executing the warrant are 'able to identify the things to be seized with reasonable certainty.'" United States v. Sleet, 54 F.3d 303, 307 n. 1 (7th Cir. 1995) (quoting United States v. Spears, 965 F.2d 262, 277 [7th Cir. 1992]).

In this case, both search warrants acknowledge the existence of Attachment 3 and Judge Goodstein clearly considered Attachment 3 in issuing the warrants. The warrants

indicate that "there is now concealed certain property, namely: SEE ATTACHMENT 3". (Government's Response to Defendant's Motion to Suppress Evidence, Attachment A). The defendant assert that this language is not sufficient to incorporate Attachment 3 and that the search warrants, by failing to sufficiently incorporate Attachment 3, violate the Fourth Amendment.

The defendant specifically asserts, that although a search warrant may cross-reference other documents, a court may construe a warrant with reference to a supporting document only if the warrant uses appropriate words of incorporation and the document accompanies the warrant, citing Groh v. Ramirez, 540 U.S. 551, 557-58 (2004). The defendant further maintains that the search warrants in this case fail to adequately incorporate Attachment 3, citing a lower court decision '"that the warrant must contain 'deliberate and unequivocal language of incorporation' in order to incorporate another document, and not merely refer to the document."' (Defendant's Post-Hearing Brief in Support of Motion to Suppress Evidence and Motion to Suppress Statements at 4 (quoting United States v. Cohan, 628 F. Supp.2d 355, 357-63 [E.D.N.Y. 2009] [holding that search warrant referencing items to be seized as "items listed in attached rider" was insufficient]).

Here, the search warrants adequately incorporated Attachment 3 by reference, see United States v. Jones, 54 F.3d 1285, 1290 (7th Cir. 1995), and it is undisputed that Attachment 3 sets forth with particularity the items to be searched and seized during the execution of the warrants. Moreover, even if the court were to find that the warrants failed to incorporate by reference Attachment 3, suppression of the evidence would not be appropriate. The court of appeals for this circuit has explained:

> The Fourth Amendment, read literally at any rate, does not require warrants; it merely restricts them. It does not forbid searches without warrants; it merely forbids unreasonable searches. "There is nothing in the amendment's text to

suggest that a warrant is required in order to make a search or seizure reasonable. All that the amendment says about warrants is that they must describe with particularity the object of the search or seizure and must be supported both by an oath or affirmation and by probable cause, which is understood, in the case of searches incident to criminal investigations, to mean probable cause that the search will turn up contraband or evidence of crime."

Sims, 553 F.3d at 582 (quoting United States v. Garcia, 474 F.3d 994, 996 [7th Cir. 2007]).

In this case, Judge Goodstein reviewed Attachment 3, the warrant referred to Attachment 3, Attachment 3 described the items with particularity to be searched and seized, and there is no assertion that the agents seized items that were not included in Attachment 3. Thus, "the [agents] conducted exactly the same search that they would have conducted had the warrant described with the requisite particularity the things that they were searching for." Sims, 553 F.3d at 583. Accordingly, the search was reasonable. See Id.

Although the search was reasonable, it does not necessarily follow that there was no violation of the Fourth Amendment. Nevertheless, "the Supreme Court has in the name of 'inevitable discovery' created an exception to the rule of cases like this in which the harm caused by an illegal search to the values protected by the Fourth Amendment is not merely slight in relation to the social benefits of the search, but zero." Sims, 553 F.3d at 584. It is zero in this case because the defendant "would have been no better off" had the warrant described the items to be seized with particularity because the agents would have executed the same search and uncovered the same evidence. See Id.

The defendant relies solely on the Supreme Court's decision in Groh, 540 U.S. at 557-58 for his assertion that the seized evidence should be suppressed in this case. The court of appeals for this circuit has addressed the decision in Groh specifically stating:

> *Groh* was a suit for damages; we doubt that the Court would have invoked the exclusionary rule when a description of the things to be seized, though missing from the warrant, appeared in an affidavit that was filed with the court in support of the application and was respected when the search occurred. The

- 11 -

> inevitable-discovery doctrine, if nothing else, would have foreclosed use of the exclusionary rule in *Groh*.

Sims, 553 F.3d at 585. Accordingly, Groh does not support suppression of the seized evidence in this case. Therefore, the court will recommend that the defendant's motion to suppress evidence be denied.

## Motion to Suppress Statements

The Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel require police to follow certain procedural safeguards during custodial interrogations of a suspect. Miranda v. Arizona, 384 U.S. 436 (1966). Prior to custodial interrogation, a suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. at 444. A suspect may waive these rights. However, a suspect who has "expressed a desire to deal with police only through counsel, is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Interrogation includes express questioning, as well as "any words or actions on the part of the police (other than those attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. at 301.

In this case, soon after the agents came to the defendant's door and informed him of the search warrants and the warrant for his arrest, the defendant said, "Maybe I should talk to my attorney." Thereafter, Special Agent Jones read the defendant his Miranda rights and the defendant indicated that he understood his rights. The defendant said that he did not want

- 12 -

to answer any questions and that he wanted to talk with his attorney first. The defendant then called his attorney, but was unable to reach him.

Special Agents Glunz and Jones sat with the defendant in his kitchen in silence. After about one minute, the defendant told agents about a transaction that occurred at his jewelry store about one year prior. The defendant said that a customer had purchased a Rolex watch and paid for the watch with cash and a cashier's check. The defendant told the agents that he prepared a letter describing the transaction and the individual making the purchase. He then attached the letter to the receipt for the purchase.

In response to the defendant's statement, Special Agent Glunz asked the defendant if he filed an "8300." When the defendant said he could not remember. Special Agent Glunz then asked the defendant how many Form 8300s he had filed. The defendant replied, "less than five." Agent Glunz described the defendant as "calm and cooperative" during this conversation and the defendant did not appear to be uncomfortable. The agents did not raise their voices or threaten the defendant. After this conversation, the agents asked the defendant procedural questions regarding the his house. They asked whether the defendant had valuables in the house that they should be aware of. The defendant informed them of a suitcase full of jewelry in the living room. The suitcase was eventually secured and the agents inquired as to whether there were any valuables at the business.

After the discussion regarding the valuables, there was a lull in the conversation. Special Agent Glunz described it as an uncomfortable silence. The defendant then asked the agents "what the warrant was about." He stated that he wanted to cooperate and that he was trying to get away from doing business with "those guys." When Special Agent Glunz asked the defendant what he meant by "those guys," the defendant responded "drug dealer types."

- 13 -

Here, the evidence establishes that the defendant's statements regarding the purchase of a Rolex watch with cash and a cashier's check and the defendant's statement that he was trying to get away from doing business with "those guys" were volunteered by him. Volunteered statements are not within the scope of Miranda, insofar as the rights are designed to protect individuals from the coercive tactics of police interrogation. Rhode Island v. Innis, 446 U.S. at 301. Since Miranda and its progeny are designed to protect criminal defendants from coercive police tactics which would produce involuntary confessions, they afford no protections to criminal defendants who, of their own volition, decide to make statements and otherwise cooperate with authorities.

The defendant's statements were not prompted by anything Special Agents Glunz and Jones did or said. The agents did not question the defendant prior to the defendant volunteering the information. However, the defendant's other statements were made in response to questions by Special Agent Glunz. Special Agent Glunz asked the defendant if he filed a Form 8300 and how many Form 8300s he had filed. Additionally, Special Agent Glunz asked the defendant what he meant by the term, "those guys." Special Agent Glunz's followup questions to the defendant's volunteered statements were "reasonably likely to elicit an incriminating response from the suspect." Therefore, such questions were improper. See Innis, 446 U.S. at 301-02. Accordingly, the court will recommend that the district court enter an order suppressing the defendant's statements that he could not remember if he had filed an "8300," that he had filed "less than five" 8300s and that when he referred to "those guys," he meant "drug dealer types."

There is no evidence that the defendant's spontaneous statements which the he seeks to suppress were involuntarily or coerced in any way. A statement is voluntary if, under the totality of the circumstances, it is a "product of a rational intellect and free will and not the

- 14 -

result of physical abuse or psychological intimidation or deceptive interrogation tactics that have overcome the defendant's free will." United States v. Huerta, 239 F.3d 865, 871 (7th Cir. 2001) (quoting United States v. Dillon, 150 F.3d 754, 757 [7th Cir. 1998]); see also, Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Here, the defendant was calm, cooperative and did not appear to be uncomfortable. The defendant was not handcuffed. The agents did not raise their voices or threaten the defendant. The defendant was detained for 45 minutes during that time, the agents were securing the defendant's valuables, and completing the search of his residence.

Based on the evidence presented, there is no basis for suppressing the defendant's spontaneous and voluntary statements to Special Agents Glunz and Jones. There is a basis for suppressing the defendant's responses to Special Agent Glunz's questions as set forth herein. Accordingly, for the reasons stated herein, the court will recommend that the defendant's motion to suppress statements be granted in part and denied in part.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant's motion to suppress evidence. (Docket # 21).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order as stated herein **granting in part** and **denying in part** the defendant's motion to suppress statements. (Docket # 25).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a) (as amended effective December 1, 2009) whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district

judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2010.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge